STATE OF CONNECTICUT *v.* LAWRENCE SMITH
(12936)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued June 4—decision released July 22, 1986

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *Alan Reisner,* assistant state's attorney, and *Bernadette Conway,* special deputy assistant state's attorney, for the appellee (state).

PETERS, C. J. The dispositive issue in this appeal is whether the trial court abused its discretion by denying the defendant's motion for a mistrial after the court, in the jury's presence, engaged in a colloquy with the state's principal witness. After a trial by jury, the defendant, Lawrence Smith, was convicted of assault in the third degree in violation of General Statutes § 53a-61,[1] and was sentenced to one year of imprisonment. He appeals from this judgment. We find error.

The jury could reasonably have found the following facts. On the evening of November 30, 1983, the defendant was in the custody of police and correction officials on the first floor of the Morgan Street detention center in Hartford. The victim, Officer Henry Lojkuc, was an employee of the state department of correction assigned to transfer inmates, via elevator, from the first floor of the detention center to the third floor for "processing," which included booking, photographing and incarceration. To that end, he entered the elevator with the defendant. During the elevator

---

[1] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person; he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument. . . ."

trip, which lasted five to six seconds, the defendant and Lojkuc were involved in an altercation. When the elevator stopped at the third floor and the door opened, a witness observed the defendant striking Lojkuc's face with his fist, while Lojkuc tried unsuccessfully to strike back. The defendant was subsequently charged with assault.

On appeal from his conviction, the defendant raises two claims of error: First, that the trial court's questions to Lojkuc while he was on the witness stand enhanced Lojkuc's credibility, depriving the defendant of his right to a fair trial before an impartial jury; and second, that the court improperly charged the jury on the standard of proof regarding circumstantial evidence.[2] Because we find error on the defendant's first claim, we need not address the second one.

The defendant premises his first claim of error on the trial court's intervention in the questioning of Henry Lojkuc, the state's first witness. On direct examination, Lojkuc testified that prior to his service with the correction department, he had served in the United States Marine Corps in Vienna, Austria, and Teheran, Iran.[3] After the defendant had concluded his cross-examination, the trial court initiated the following colloquy with the witness:

"The Court: Nothing further. Just a couple of questions, Officer Lojkuc. You said you were in the Marines, security officer at the embassy?

"The Witness: Yes, sir, I was.

"The Court: And did you indicate Vienna?

[2] The trial court's charge on circumstantial evidence was similar to the charge which we held to be erroneous in State v. Rodgers, 198 Conn. 53, 57, 502 A.2d 360 (1985).

[3] Lojkuc made brief additional reference to his Marine service in response to defense questions on cross-examination.

"The Witness: Yes, sir.

"The Court: And did you also indicate you were in Iran?

"The Witness: Yes, sir. I did.

"The Court: What period of time?

"The Witness: Nineteen seventy-nine.

"The Court: During the take over?

"The Witness: Yes, sir.

"The Court: Were you a captive?

"The Witness: Yes, sir. I was.

"The Court: How long were you a captive?

"The Witness: Approximately three months.

"The Court: Were you released early?

"The Witness: No, sir. There were two takeovers at that point. One in February 79—was one in November. The takeover in November lasted 444 days.

"The Court: Thank you. Only question the Court has. All right. You are excused, Officer. Thank you. . . ."

Lojkuc had previously testified that during the elevator ride the defendant had attacked him without provocation, punching him and knocking him to the floor of the elevator and repeatedly striking him thereafter. The defendant, testifying on his own behalf, told a very different story. He claimed that Lojkuc had pushed him inside the elevator while it was stopped on the first floor, and that, while in transit to the third floor, Lojkuc had taken hold of him by the throat and had punched him in the eye. The defendant testified that in an effort to push Lokjuc away, he had knocked Lojkuc down and caused him to strike his head on a metal cage inside the elevator. Both Lojkuc and the

defendant suffered minor injuries as a result of the altercation. Which version of the incident the jury accepted as true largely depended on whether it perceived Lojkuc or the defendant as the more credible witness.

The defendant did not immediately object to the trial court's questioning of Lojkuc. The following day, however, the defendant moved for a mistrial, arguing that the court's questions had unfairly bolstered Lojkuc's credibility, depriving the defendant of a fair and impartial jury.[4] The court denied the motion, but proposed to give curative instructions to the jury.[5] In its charge to the jury, the court gave general instructions on gauging witness credibility and exhorted the jurors not to give special credence to the testimony of police and correction officers, but made no reference to its questioning of Lojkuc.[6]

A trial court should grant a motion for mistrial only where it is apparent that an occurrence during the trial has so prejudiced a party that he can no longer receive a fair trial. *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 866 (1986); *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984); *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The trial court enjoys broad discretion in deciding whether a mistrial is warranted, and its decision will be reversed on appeal only if this discretion has been abused. *State* v. *Fleming,* supra; *State* v. *Nowakowski,* 188 Conn. 620, 624, 452

---

[4] The state has not argued that the delay in objecting to the trial court's comments forecloses our review of the defendant's motion. We have held that an objection to judicial intervention in a trial is timely made so long as it is raised before the jury renders its verdict. *Miller* v. *Drouin,* 183 Conn. 189, 193, 438 A.2d 863 (1981).

[5] The defendant took exception to the court's ruling.

[6] The defendant failed to take exception to the trial court's charge as it related to the relevant issues on this claim of error.

A.2d 938 (1982). In the instant case, we find that the trial court did abuse its discretion in denying the defendant's motion for a mistrial.

Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral atmosphere. U.S. Const., amend. XIV; Conn. Const., art. I § 8; *State* v. *Fernandez,* 198 Conn. 1, 10, 501 A.2d 1195 (1985); *State* v. *Gordon,* 197 Conn. 413, 424D, 504 A.2d 1020 (1985). It is the trial court's responsibility to conduct the trial in the " 'atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding.' " *State* v. *Fernandez,* supra, 10, quoting *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Gordon,* supra, 425; *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975). Particularly in the presence of the jury, which may readily be influenced by a judge's words or conduct, the trial court has an obligation to comport itself in a circumspect and dispassionate manner. *Quercia* v. *United States,* 289 U.S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); *State* v. *Fernandez,* supra, 12; *Cameron* v. *Cameron,* 187 Conn. 163, 169, 444 A.2d 915 (1982); *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 503, 101 A.2d 500 (1953). The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. *State* v. *Fernandez,* supra, 12; *State* v. *Bember,* 183 Conn. 394, 402, 439 A.2d 387 (1981); *State* v. *Echols,* supra, 14.

We recognize that a trial court has a discretionary right to intervene in the examination of witnesses in certain circumstances. Such intervention may be necessary to clarify confusing testimony, to restrain an obstreperous witness, or to elucidate a witness's understanding of a question. *State* v. *Fernandez,* supra, 12; *State* v. *Bember,* supra, 402–403; *State* v. *Echols,* supra,

14. The court's questioning of a witness is not necessarily improper because it draws attention to the strengths or weaknesses of a party's case. *State* v. *Echols,* supra, 14. However, the court should avoid questioning witnesses in a manner that reflects in any fashion on their credibility. See *State* v. *Fernandez,* supra, 14–15; *State* v. *Mack,* 197 Conn. 629, 642–43, 500 A.2d 1303 (1985); *Miller* v. *Drouin,* 183 Conn. 189, 192, 438 A.2d 863 (1981). Determinations of credibility are solely the function of the jury. *State* v. *George,* 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216 (1952). In all but the most exceptional circumstances, the trial court should allow adversaries' counsel, subject to the rules of evidence, to elicit from witnesses whatever responses may appropriately influence the jury's judgments on credibility. See *United States* v. *Hickman,* 592 F.2d 931, 936 (6th Cir. 1979); *State* v. *Fernandez,* supra, 15–16.

In the instant case, there was no reason for the trial court to supplement counsel's examination of Lojkuc with questions of its own on the witness's experiences as a hostage in Iran. Direct and cross-examination had clearly established the witness's version of the facts, rendering judicial clarification of his testimony unnecessary. The court's intervention was purely gratuitous. Its questions had no relevance to any material issue in the case. Cf. *United States* v. *Hickman,* supra.

While it is impossible to ascertain precisely what effect the trial court's questioning had on the jury, the possibility of harm is evident. The outcome of the trial depended largely on the jury's assessments of the respective credibility of Lojkuc and the defendant. Counsel's questions had established that Lojkuc was a corrections officer with several years experience and that he was a former Marine. Against this backdrop

of official authority, the court's questions invited the jury to perceive the state's chief witness as someone to be respected and admired—a man who had endured hazardous duty, and eventual captivity, in the service of his country. The defendant, in contrast, was in police custody at the time of the incident and had a prior record of felony convictions. In light of the circumstances, it is impossible for us to agree with the state's contention that the trial court's unwarranted intervention was merely harmless error.

In *State* v. *Fernandez,* supra, the trial court interrogated the defendant's sole witness, bringing to the jury's attention inconsistencies between the witness's testimony at trial and prior statements made before the court at a guilty plea proceeding. Id., 6–7. We held that the court's questioning undermined the witness's credibility and deprived the defendant of his constitutional right to a fair trial.[7] Id., 15–17. The fact that the court charged the jury not to be influenced by the court's questions to witnesses in its weighing of the credibility of testimony did not cure the error. Id., 8, 17.

The instant case is the mirror image of *State* v. *Fernandez.* Instead of casting aspersions on the credibility of a defense witness, as in *Fernandez,* the trial court questioned the state's principal witness in a manner that tended to enhance the witness's credibility in the jury's eyes. Despite the state's argument to the contrary, a trial court's bolstering of the credibility of a state's witness is not fundamentally different, or less harmful, than its attacking the credibility of a defense

---

[7] Unlike the instant case, in which the defendant made a timely motion for mistrial, the defendant in *State* v. *Fernandez* failed to object at trial level to the court's interrogation of the witness. We nevertheless reviewed his claim under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), on the grounds that the record adequately supported "a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial." *State* v. *Fernandez,* 198 Conn. 1, 9–10, 501 A.2d 1195 (1985), quoting *State* v. *Evans,* supra, 70.

witness. We deem it "highly inappropriate" for the trial court to interject comments that "might have been construed to indicate a favorable view of the credibility of the witness on the part of the court. . . ."[8] *State v. Mack,* supra, 642.

The state argues that any prejudice resulting from the trial court's questions was mitigated by the court's instructions to the jury to make its own judgments on credibility and to avoid giving particular credence to the testimony of police and corrections officials. We disagree. While this court has traditionally given great weight to curative instructions in assessing a defendant's claims of prejudice; see *State v. Fernandez,* supra, 17; *State v. Binet,* 192 Conn. 618, 632, 473 A.2d 1200 (1984); no relevant curative instructions were given in this case. The trial court's general instructions on credibility made no reference to how the jury should regard the court's own questioning of witnesses, and the credibility inferences that might be drawn therefrom. We need not consider whether such a reference, in the circumstances of this case, would have cured the error, or whether the impact of prejudice was too great to be overcome by a properly drafted curative instruction. See *Bruton v. United States,* 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); *State v. Echols,* supra, 15–16; *State v. Tinsley,* 180 Conn. 167, 170–71, 429 A.2d 848 (1980).[9]

Our decision to order a new trial does not depend on what motivated the trial court to intervene in the ques-

---

[8] Although we deemed the comments erroneous, we did not grant a new trial in *Mack* because of the defendant's failure to make a timely objection to them at trial. *State v. Mack,* 197 Conn. 629, 642, 500 A.2d 1303 (1985).

[9] The state argues further that it presented sufficient evidence of the defendant's guilt at trial to render the trial court's comments "irrelevant." As we noted in *State v. Castonguay,* 194 Conn. 416, 436, 481 A.2d 56 (1984), however, even overwhelming evidence of a defendant's guilt "hardly addresses the issue of whether the jury that weighed that evidence was impartial." Id.

tioning of Lojkuc. Even though we assume that the court's intentions were entirely benevolent, "[t]he appearance as well as the actuality of impartiality [of the trial judge] is an essential ingredient of a fair trial." *Cameron* v. *Cameron*, 187 Conn. 163, 170, 444 A.2d 915 (1982); see also *State* v. *Fernandez,* supra, 15. It is the effect, and not the motivation of the questioning that compels the result we reach today.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.