STATE OF CONNECTICUT *v.* DANTE BOND
(AC 16306)

O'Connell, C. J., and Schaller and Daly, Js.

Argued February 17—officially released June 23, 1998

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Alison Siegler*, law student intern, for the appellant (defendant).

*Linda N. Howe*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, *Donald A. Browne*, former state's attorney, *Stephen J. Sedensky*, assistant state's attorney, and *Megan McLoughlin*, certified legal intern, for the appellee (state).

DALY, J. The defendant, Dante Bond, appeals from the judgment of conviction, following a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[1] and 53a-54a (a),[2] and two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (3).[3] The defendant claims that the trial court improperly (1) instructed the jury regarding the intent required for a conviction of assault in the second degree as an accessory, (2) questioned a state's witness about the role of a coconspirator, (3) instructed the jury regarding certain activity as part of a criminal conspiracy, (4) failed to grant the motion for judgment of acquittal due to insufficient evidence as to the conspiracy to commit murder charge and (5) failed to grant the motion for judgment of acquittal due to insufficient evidence as to the counts of reckless assault in the second degree.

The jury reasonably could have found the following facts. On December 14, 1992, Carmen Rosales was

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

asleep in her bedroom with her two children when shooting started outside her apartment at 774 Hallett Street in Bridgeport. She threw herself and her two children on the floor. Her two year old son, Edwin Rosales, was shot in the left leg. Her brother, William Rosario, was asleep in another bedroom in the apartment and was shot in the right leg. Alexander Aponte was outside the building, around the corner on Stillman Street, and died of multiple gunshot wounds.

Officer James Baraja of the Bridgeport police department reported to the corner of Hallett and Stillman Streets at 2:47 a.m. and entered the first floor of the 774 Hallett Street apartment building. The front of this building was littered with shell casings, and the first floor had been riddled with bullets. Baraja discovered Edwin Rosales and Rosario suffering from gunshot wounds. On Stillman Street, Baraja found Aponte's body and more shell casings.

Other police officers who responded to the scene found seventy-seven shell casings. The state forensics laboratory concluded that the casings came from three firearms, one .223 caliber assault type weapon and two nine millimeter caliber semiautomatic weapons. An autopsy revealed that the bullets in Aponte's body were all .223 caliber and were consistent with the casings collected from around his body. The physician who performed the autopsy on Aponte concluded that the cause of his death was multiple gunshot wounds.

At trial, Irma Otero testified that early in the morning on December 14, 1992, she was standing three blocks south of the intersection of Hallett and Stillman Streets on the corner of Jane and Hallett Streets. She was talking with a friend when she saw three men wearing black clothing stop in front of 774 Hallett Street and begin shooting at the building. She and her friend hid until the shooting ceased and, on the way home, they saw

the body of Aponte with bullet wounds. Otero's friend alerted the police. Otero believed that Aponte looked like one of the shooters, given his size, black pants, black hooded sweatshirt and black ski mask.

Julio Vasquez testified that he was at Richard Morales' apartment on the evening of December 13, 1992. Vasquez testified that the defendant and Michael Folch entered the apartment and asked Morales where the guns were. The defendant left with an AR-15 rifle,[4] and Folch took a nine millimeter weapon. They also took a third gun. Vasquez saw Aponte outside in the apartment parking lot, waiting for Folch and the defendant.

Vasquez testified that two weeks later he overheard a conversation between the defendant and Folch at Morales' apartment. The defendant said to Morales that what scared him the most was when Aponte looked at him and said, "Why me?"

Greg Syr testified that one day before the incident, he was with Morales in Morales' apartment when the defendant entered and stated that he was having problems with Aponte and wanted to kill him. The defendant then said, "It's either Alex or myself." At 3:30 a.m. on the day of the incident, the defendant went to Morales' apartment and indicated, in the presence of Syr, Vasquez and Miguel Torres, that he "got" Aponte.

Syr also testified that one month after the incident, the defendant told Syr that contrary to what Folch was saying, the defendant had shot Aponte, not Folch. Syr said the defendant used Aponte's gun, an M-16,[5] to kill Aponte.

I

In his first claim, the defendant argues that the trial court's instruction on accessorial liability for assault in

---

[4] This type of weapon could fire .223 caliber ammunition.

[5] This weapon is the military version of the rifle described by Vasquez.

the second degree was improper because it failed to include reference to the dual intent requirement. The defendant neither requested an instruction on dual intent nor took an exception to the court's instructions. He now seeks *Golding*[6] review.

"The accessory statute, [General Statutes] § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original.) *State* v. *Harrison*, 178 Conn. 689, 694, 425 A.2d 111 (1979).

In *State* v. *Foshay*, 12 Conn. App. 1, 23–24, 530 A.2d 611 (1987), and *State* v. *Fudge*, 20 Conn. App. 665, 670, 569 A.2d 1145, cert. denied, 214 Conn. 807, 573 A.2d 321 (1990), the trial court considered claims identical to the one presented here. In *Foshay*, *Fudge* and the present case, "the trial court read General Statutes § 53a-8 in full to the jury. The *Foshay* court held that such a claim was not truly of constitutional proportion and accordingly was not reviewable under the [*Golding*] doctrine." *State* v. *Fudge*, supra, 670. Because *Foshay* and *Fudge* are directly on point and controlling, the defendant's first claim is not reviewable. The defendant's claim of improper instruction on accessorial liability is not of constitutional proportion.

## II

The defendant premises his second claim on the trial court's intervention in the questioning of Vasquez, a

---

[6] In *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional

state's witness, and asserts that the trial court deprived the defendant of his right to a fair trial. The defendant challenges the following questioning by the court:

"The Court: And did you feel that Folch was a participant in the killing of Aponte?

"Vasquez: Yes, sir.

"[State's Attorney]: In—His Honor just asked you a question about whether or not you felt Folch was some type of participant in the killing of Aponte, and it's your understanding that who shot Aponte?

"Vasquez: Dante Bond."

The defendant raised no objection to either question. After the jury was charged, the defendant requested that the trial court instruct the jury to disregard the state's question and Vasquez' answer concerning who shot Aponte. The state objected and stated that if the trial court was so inclined, it should strike the court's question as well. The defendant did not ask that the court's question be stricken. In response, the trial court instructed the jury, "I've already told you [to] disregard any questions I've asked any witness in the case, including that one . . . as to who shot Aponte." The defendant did not object to this instruction.

"Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral atmosphere. U.S. Const., amend. XIV; Conn. Const., art. I, § 8; *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985); *State* v. *Gordon*, 197 Conn. 413, 424D, 504 A.2d 1020 (1985). It is the trial court's responsibility to conduct the trial in the atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. *State* v. *Fernandez*, supra, 10, quoting *Glasser* v.

violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)

*United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Gordon*, supra, 425; *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975). Particularly in the presence of the jury, which may readily be influenced by a judge's words or conduct, the trial court has an obligation to comport itself in a circumspect and dispassionate manner. *Quercia* v. *United States*, 289 U.S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); *State* v. *Fernandez*, supra, 12; *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982); *Felix* v. *Hall-Brooke Sanitarium*, 140 Conn. 496, 503, 101 A.2d 500 (1953). The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. *State* v. *Fernandez*, supra, 12; *State* v. *Bember*, 183 Conn. 394, 402, 439 A.2d 387 (1981); *State* v. *Echols*, supra, 14.

"We recognize that a trial court has a discretionary right to intervene in the examination of witnesses in certain circumstances. Such intervention may be necessary to clarify confusing testimony, to restrain an obstreperous witness, or to elucidate a witness's understanding of a question. *State* v. *Fernandez*, supra, [198 Conn.] 12; *State* v. *Bember*, supra, [183 Conn.] 402–403; *State* v. *Echols*, supra, [170 Conn.] 14. The court's questioning of a witness is not necessarily improper because it draws attention to the strengths or weaknesses of a party's case. *State* v. *Echols*, supra, 14. However, the court should avoid questioning witnesses in a manner that reflects in any fashion on their credibility. See *State* v. *Fernandez*, supra, 14–15; *State* v. *Mack*, 197 Conn. 629, 642–43, 500 A.2d 1303 (1985); *Miller* v. *Drouin*, 183 Conn. 189, 192, 438 A.2d 863 (1981). Determinations of credibility are solely the function of the jury. *State* v. *George*, 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968

(1985); *Zullo* v. *Zullo*, 138 Conn. 712, 715, 89 A.2d 216 (1952)." (Internal quotation marks omitted.) *State* v. *Smith*, 200 Conn. 544, 549–50, 512 A.2d 884 (1986).

While the defendant's claim is reviewable under *Golding*, "this court has traditionally given great weight to curative instructions in assessing a defendant's claims of prejudice." Id., 552. Unlike in *Smith*, where only general instructions were given and the testimony of the state's chief witness was under scrutiny, in this case curative, relevant instructions were given, and there was other evidence as to the shooting of Aponte. "It is clearly to be presumed, when the contrary does not appear, that a jury follows the instructions of the court in reaching its verdict." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, p. 155.

We conclude that the instructions cured any prejudice caused by the trial court's question, and the defendant was not deprived of a fair trial.

### III

The defendant next claims that he was deprived of a fair trial when the court instructed the jury in its charge as follows: "I'm going to charge you on accomplice testimony because there is evidence here that what was going on at [Morales' apartment] was part of a criminal conspiracy and people participated in it." The defendant argues that this instruction effectively directed a verdict on a contested issue and relieved the state of its burden of proving the essential elements of criminal conspiracy.

The defendant concedes that he neither filed a request to charge nor excepted to the jury instruction that he now claims was improper. He requests review under *Golding*.[7]

---

[7] See footnote 6.

Although the record before us is adequate to review this claim, the defendant has failed to meet the second prong of the *Golding* test because his claim of instructional impropriety is not one of constitutional magnitude. See *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997). Our Supreme Court has stated that " '[j]ust as every claim of evidentiary error by the trial court is not truly constitutional in nature; see, e.g., [*State* v. *Golding*, 213 Conn. 233, 241, 567 A.2d 823 (1989)]; every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding the elements of an offense; see, e.g., *State* v. *Boles*, 223 Conn. 535, 543, 613 A.2d 770 (1992); and claimed instructional errors regarding the burden of proof or the presumption of innocence; see, e.g., *State* v. *Adams*, 225 Conn. 270, 289, 623 A.2d 42 (1993); are constitutional in nature, so as to satisfy the second *Golding* requirement. We have also recognized, however, that claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature. *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991). Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right.' *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993)." *State* v. *Dash*, supra, 151–52.

We decline to review the defendant's claim because it fails the second prong of *Golding* in that it implicates only general principles of credibility.

IV

The defendant also appeals from the denial of his motion for judgment of acquittal on the count of conspiracy to commit murder, which motion was filed at

the conclusion of the state's case and was based on a claim of insufficient evidence.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . *State* v. *Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). As we have often noted, proof

beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . *State* v. *DeJesus*, supra, 196; see also *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994).

"Furthermore, [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. *State* v. *Tomasko*, 238 Conn. 253, 258, 681 A.2d 922 (1996). Accordingly, [w]e do not sit as a [thirteenth] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . Id. Finally, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *State* v. *Ford*, supra, 230 Conn. 693; *State* v. *Little*, supra, 194 Conn. 674; see also *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985) ([i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom).

"Because the defendant was convicted of conspiracy to commit murder, we also must consider the essential elements of the crime of conspiracy. To establish the crime of conspiracy [to commit murder . . . the state must show] that an agreement was made between two or more persons to engage in conduct constituting [the crime of murder] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons. . . . *State* v. *Bova*, 240 Conn. 210, 245–46, 690 A.2d 1370 (1997); *State* v. *Taylor*, 239 Conn. 481, 495–96, 687 A.2d 489 (1996) [cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997)]." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489–92, 698 A.2d 898 (1997).

"Moreover, it is well settled that conspiracy is a specific intent crime, with the intent divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also they intended to commit the elements of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Estrada*, 28 Conn. App. 416, 421, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 45 Conn. App. 297, 299, 696 A.2d 344, cert. denied, 241 Conn. 927, 697 A.2d 362 (1997). In a conspiracy prosecution, when determining both a defendant's specific intent to agree and his specific intent that the criminal acts be performed, the jury may rely on reasonable inferences from facts in the evidence and may develop a "chain of inferences, each link of which may depend for its validity on the validity of the prior link in the chain." *State* v. *Sivri*, supra, 231 Conn. 130.

The jury had before it evidence that the defendant asked Morales for permission to kill Aponte. A day or two prior to the shooting, the defendant stated in Morales' apartment, "It's either Alex or myself." Folch and the defendant were observed leaving Morales' apartment with weapons shortly before the incident. Aponte was outside the apartment waiting for them. The defendant, on two occasions subsequent to the incident, admitted to the killing, rebutting Folch's bragging that Folch committed the act.

We conclude that when evaluated under the appropriate standard, the evidence in this case was sufficient to support the conviction of conspiracy to commit murder.

V

The defendant finally appeals from the denial of his motion for judgment of acquittal on the counts of reckless assault in the second degree, which was filed at the conclusion of the state's case. He bases this argument on insufficiency of the evidence. The defendant

maintains that either Aponte or Folch could have fired the bullets that struck Rosario and Rosales.

While the amended substitute information does not contain any accessory language, "[t]he fact that a defendant is not formally charged as an accessory pursuant to General Statutes § 53a-8 does not preclude a conviction as such." *State* v. *Correa*, 241 Conn. 322, 340, 696 A.2d 944 (1997).

"Under § 53a-8, a person may be prosecuted and punished as if he were a principal offender when, acting with the mental state required for commission of an offense, [he] solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . . Therefore, as we have stated in the past, [t]he terms [accessory and principal] refer to the alternate means by which one substantive crime may be committed. . . .

"Where a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon. . . . This rule is based on the principle that jurors are presumed to follow the instructions given by the judge. . . . A court's instruction to the jury on a particular statutory alternative authorizes the jury to consider that theory of criminality, thus clearly implying that there is a factual question for [it] to resolve under the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 212 Conn. 593, 598–99, 563 A.2d 671 (1989).

The defendant had notice that he was subject to accessorial liability, and the court charged accordingly. Although the evidence did not clearly demonstrate which of the perpetrators actually fired the shots that injured Rosales and Rosario, the evidence did establish

that the defendant and his companion together prepared themselves by obtaining their weapons, positioning themselves in front of the premises at 774 Hallett Street and firing repeatedly at the premises.

If the jury credited the state's version of the facts, the evidence was sufficient to show concert of action between the defendant and his companion to support the accessory allegation. Therefore, we conclude that the defendant's claims of evidentiary insufficiency are without merit. See *State* v. *Diaz*, 237 Conn. 518, 544, 679 A.2d 902 (1996).

The judgment is affirmed.

In this opinion the other judges concurred.