STATE OF CONNECTICUT *v.* EDWIN SANTOS
(AC 23766)

West, DiPentima and Mihalakos, Js.

Argued October 21, 2003—officially released January 20, 2004

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Robert M. Brennan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Edwin Santos, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a. On appeal, he claims that the state presented insufficient evidence to prove beyond a reasonable doubt each essential element of the charged offense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of May 8, 2000, the victim, Carmelo DeJesus, drank a half-pint of rum with Antonio Perez near the corner of Park Avenue and Railroad Avenue in Bridgeport. As Perez relieved himself behind a store, the victim got into an argument with an individual who Perez later identified as the defendant.[1] The victim told Perez that the defendant was looking to fight with the victim. A short time later, the defendant returned in a vehicle described as a "Blazer," threw a beer bottle at the two men and drove off. Perez decided to return home and left the victim alone.

---

[1] Although Perez recanted his pretrial identification of the defendant and claimed that the defendant was not the person he saw arguing with the victim, the pretrial identification was admitted into evidence under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

Mohammed Alqaisy, who worked at a store on the corner of Park and Railroad Avenues, briefly spoke with the victim while taking a cigarette break outside. Alqaisy testified that the victim seemed mad about something. The defendant then appeared from behind an ice machine close to where Alqaisy sat.[2] He called the victim over to talk. The victim asked the defendant if he planned to shoot him. The defendant answered that he did not want to shoot him and pulled his shirt up to show him that he was not armed. The victim then walked around the corner with the defendant. Alqaisy testified that "five, ten, fifteen second[s]" later, he heard shooting. He walked past the ice machine and could see "two guys running and [the victim] on the floor." Lieutenant Thomas Lula of the Bridgeport police department testified that it took approximately fourteen seconds to walk from the ice machine to the location where the victim was shot to death. He was shot at least ten times. The jury convicted the defendant, and the court sentenced him to an effective prison term of twenty years. This appeal followed.

The defendant claims that the state failed to present sufficient evidence to prove beyond a reasonable doubt the essential elements of the charged crime of conspiracy to commit murder. He specifically argues that the state failed to prove, beyond a reasonable doubt, that he intended to agree with another person to commit murder. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of

[2] During his testimony, Alqaisy referred to the defendant as "Edwin" and to the victim as "Carmelo."

fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996).

"Because the defendant was convicted of conspiracy to commit murder, we also must consider the essential elements of the crime of conspiracy. To establish the crime of conspiracy [to commit murder . . . the state must show] that an agreement was made between two or more persons to engage in conduct constituting [the crime of murder] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." (Internal quotation marks omitted.) *State* v. *Bond*, 49

Conn. App. 183, 195, 713 A.2d 906, cert. denied, 247 Conn. 915, 722 A.2d 808 (1998).

From the cumulative impact of the evidence presented, there was sufficient evidence for the jury reasonably to conclude that the defendant had intended to agree with another person to murder the victim. In closing argument, the state's theory of the agreement to murder the victim was articulated as follows: "You can draw a reasonable and logical conclusion beyond a reasonable doubt that there was an agreement because the defendant came up to the ice machine, opened his coat [and] got [DeJesus] to come back down Railroad Avenue. Several, ten to fifteen seconds later, Mohammed said, the shooting starts. Why would he open his coat at all if not to show him that he had no weapon to get him to go down there?"

The defendant asked the victim to approach the ice machine. The victim hesitated and expressed his concern that the defendant wanted to shoot him. The defendant pulled up his shirt to reveal that he had no weapon. The victim then walked with the defendant around the corner. Approximately fifteen seconds later, he was shot ten times. Alqaisy saw two men fleeing the scene. The evidence presented, and the reasonable and logical inferences that could be drawn from it, support the jury's conclusion that an agreement was formed between the defendant and another person to kill the victim before asking him to approach the ice machine.

Having construed the evidence in the light most favorable to sustaining the verdict, we determine that on the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the defendant conspired with another individual to murder the victim.

The judgment is affirmed.

In this opinion the other judges concurred.