DANTE BOND *v.* COMMISSIONER OF CORRECTION
(AC 24633)

Schaller, Bishop and DiPentima, Js.

---

Submitted on briefs October 27, 2004—officially released January 18, 2005

*Aaron J. Romano*, special public defender, filed a brief for the appellant (petitioner).

*Walter D. Flanagan*, state's attorney, *Mitchell S. Brody*, senior assistant state's attorney, and *Angela R.*

*Macchiarulo*, senior assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Dante Bond, appeals following the denial by the habeas court of his petition for certification to appeal from its judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that he had received the effective assistance of counsel. Specifically, he argues that his trial counsel was ineffective in failing to make objections in five specific instances during the course of his criminal trial.[1] We dismiss the petitioner's appeal.

On December 14, 1992, a shooting occurred in Bridgeport in which two people were injured and one was killed. Attorney Lawrence Hopkins, an experienced criminal defense lawyer,[2] represented the petitioner with respect to the criminal charges resulting from this shooting. The jury convicted the petitioner of one count of conspiracy to commit murder and two counts of assault in the second degree. The court sentenced the petitioner to a term of twenty-five years incarceration and five years probation. The petitioner's conviction was affirmed on direct appeal. See *State* v. *Bond,* 49 Conn. App. 183, 713 A.2d 906, cert. denied, 247 Conn. 915, 722 A.2d 808 (1998). Additional facts will be set forth as necessary.

I

As a preliminary matter, we set forth the legal principles and standard of review that govern our resolution

---

[1] The petitioner withdrew additional claims of ineffective assistance of counsel during the proceedings before the habeas court.

[2] During the habeas proceeding, Hopkins testified that he had practiced law for approximately twenty years and that he practiced almost exclusively criminal defense.

of this appeal. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . For the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different. *White* v. *Commissioner of Correction*, [58 Conn. App. 169, 170, 752 A.2d 1159 (2000)], citing *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . ." (Internal quotation marks omitted.) *Faust* v. *Commissioner of Correction*, 85 Conn. App. 719, 721–22, 858 A.2d 853, cert. denied, 272 Conn. 909, 863 A.2d 701 (2004). "A reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.)

*Rivera* v. *Commissioner of Correction,* 70 Conn. App. 452, 456, 800 A.2d 1194, cert. denied, 261 Conn. 921, 806 A.2d 1061 (2002).

## II

On appeal, the petitioner raises several claims of ineffective assistance of counsel. Specifically, he argues that his counsel was ineffective in failing to object (1) when the trial court allowed the jury to look at a map prior to the close of evidence, (2) to the trial court's statement as to the trustworthiness of certain evidence, (3) to the prosecutor's statement as to his personal knowledge of the "truth," (4) to an improper jury instruction regarding accomplice liability and (5) to an improper jury instruction regarding accessory liability for assault in the second degree. We address each claim in turn.

## A

The petitioner first claims that he did not receive effective assistance of counsel because Hopkins failed to object when the trial court allowed the jury to look at a map prior to the close of evidence. Specifically, the petitioner argues that allowing the jury to look at the map during the course of the trial resulted in premature deliberation, contrary to the rule set forth in *State* v. *Washington,* 182 Conn. 419, 438 A.2d 1144 (1980). We are not persuaded.

At the habeas trial, the transcript of the petitioner's criminal trial was admitted into evidence. The petitioner testified that he recalled that at the criminal trial an aerial map of the east side of Bridgeport was admitted into evidence. The petitioner further stated that the jury took the map into the jury room prior to the court's charge.

Attorney John R. Williams testified at the habeas trial as an expert for the petitioner. Williams summarized

the events at the criminal trial with respect to the map. He testified that the prosecutor requested that the jury be excused. The court asked counsel if there was any objection to the court's allowing the jury to take the map with it into the jury room. Neither party objected, and the court stated to the jury: "Why don't you take it right out with you. You can look at it casually." Williams opined that Hopkins should have either objected to the jury's taking the map into the jury room or asked for an instruction to prevent the jury from discussing either the map or the case.

Hopkins testified that he reviewed the evidence and documents, such as affidavits and police reports pertaining to the case, in order to prepare to represent the petitioner in his criminal matter. He further stated that he developed the defense strategy that the petitioner was not present at the time the crimes were committed. Last, he noted that he utilized the state's "open file" policy to examine documents and other evidence. With respect to the issue of the map, Hopkins opined that it was "antiseptic" and did not have much to do with the defense. He also believed that it did not matter if the jury looked at the map in the courtroom or the jury room because, in his professional opinion, the map did not have a great deal of relevance to his strategy.

In its memorandum of decision, the habeas court determined that Hopkins' decision not to object when the court allowed the jury to look at the map was a tactical choice. The defense strategy was to attack the credibility of certain witnesses and to demonstrate that there was no evidence linking the petitioner to the crimes charged. On the basis of this strategy, Hopkins considered the map immaterial.

We have stated that "[i]n properly assessing the deficiency component of the *Strickland* test, the court must be mindful that [a] fair assessment of attorney perfor-

mance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 85 Conn. App. 544, 549–50, 857 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004). We agree with the habeas court that Hopkins' decision not to object when the court allowed the jury to review the map in the jury room fell within the wide range of reasonable professional assistance.

We also agree with the habeas court that the petitioner has failed to demonstrate that if Hopkins had objected to the jury's viewing of the map the result of the trial would have been different. Williams testified that the trial court committed "per se" error in allowing the jury to view the map without instructing it to refrain from discussing the case. Williams stated that this violated the rule set forth in *State* v. *Washington*, supra, 182 Conn. 425–29. The habeas court properly distinguished *Washington* from the present case. In *Washington*, the trial court instructed the jury that it could "discuss" the evidence it heard, but was prohibited from deliberating or voting. Id., 422–23. Our Supreme Court held that it was improper for the trial court to have "*expressly instructed the jurors that they were permitted to discuss the evidence in the jury room prior to the termination of the case.*" (Emphasis added.) Id., 425–26; see also *State* v. *Castonguay*, 194 Conn. 416, 433–34, 481 A.2d 56 (1984) (erroneous for court expressly to instruct jurors that they may discuss case among themselves

prior to submission to them); *State* v. *Robins*, 34 Conn. App. 694, 705–707, 643 A.2d 881 (1994) (plain error to instruct jurors that they may discuss personalities and charges with relatives, but not evidence), aff'd, 233 Conn. 527, 600 A.2d 738 (1995).

In the present case, the court did not instruct the members of the jury that they were permitted to discuss the map. Instead, they were told that it was permissible to look casually at it. The habeas court found that there was no evidence that the jury prematurely discussed the map. Furthermore, the court, on the first day of the criminal trial, instructed the jurors that they should not discuss the evidence with each other or anyone else during the presentation of the evidence. We agree with the habeas court that, on the basis of these facts and circumstances, the rule set forth in *Washington* is inapplicable and that, therefore, there is no evidence that the petitioner satisfied the second prong of *Strickland*. We conclude, therefore, that the petitioner has failed to demonstrate that this issue is debatable among jurists of reason, that a court could resolve it in a different manner or that it deserves encouragement to proceed further.

B

The petitioner next argues that his counsel was ineffective in failing to object to the trial court's statement as to the trustworthiness of certain evidence.[3] Specifi-

---

[3] In its memorandum of decision, the habeas court stated that it would "not address this specification of ineffective assistance because the petitioner failed to plead it in his April 30, 2002 petition for a writ of habeas corpus." The court, however, did assume in the alternative that review of this claim was required. In his brief to this court, the petitioner argues that this claim was properly before the habeas court as a result of Williams' testimony and Practice Book § 5-2. In its brief, the state argues that this claim was not before the habeas court, but, in the alternative, it addressed the merits. Although it does not appear that this issue was pleaded properly, because the habeas court addressed the merits of this claim, we will do the same.

cally, he claims that Hopkins should have objected, requested a mistrial or requested a curative instruction when the court stated that it would determine whether certain testimony was trustworthy. We disagree.

At the criminal trial, Julio Vasquez testified against the petitioner. After an objection, the court stated in relevant part: "It's admissible, in other words, Vazquez's statements about testimony, about what [the petitioner] was going to say or what [the petitioner] had said, is admissible after I determine whether it's . . . from a trustworthy source, whether this testimony is trustworthy. I'm going to reserve on that until I hear the state's case and then I will dissect this evidence and what I find to be untrustworthy is going out and whatever is left is what we'll go with. I'm doing that on his objection." This statement was made in the presence of the jury.

The petitioner contends that by allowing Vasquez to testify after that statement, the court usurped the jury's role of determining credibility. This contention, however, fails to recognize the curative instruction given by the court. In its memorandum of decision, the habeas court stated: "In its final charge, the trial court told the jurors that it was 'wrong' when it told them that it would determine the reliability of the evidence. They were further told to make their own independent determination about [the] credibility of the evidence and to disregard any opinions of the attorneys or the court regarding the veracity of the witnesses. These final instructions cured any prejudice which the petitioner might have suffered. . . . There is no evidence that the jury failed to heed the court's instructions regarding the issue of credibility. Because the trial court told the jurors that the court was wrong to make the remark about 'trustworthiness' and further told them to assess the credibility of the evidence for themselves, any prejudice resulting from the court's comments [was] cured, and

the jury made its own independent findings of fact. There simply is no reasonable probability that the results of the trial would have been different if Hopkins had objected or asked for a mistrial at the time the court made its remark."

"It is to be presumed that the jury followed the court's [curative] instructions unless the contrary appears. . . . We have repeatedly acknowledged, in cases tried to a jury, that curative instructions can overcome the erroneous effect of statements that a jury should not have heard. . . . Because curative instructions often remedy the prejudicial impact of inadmissible evidence . . . [w]e have always given great weight to such instructions in assessing claimed errors. . . . Thus, [a] jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating to the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533–34, 737 A.2d 392 (1999).

In the present case, the curative instruction given by the court removed any prejudice that resulted from the court's comment regarding "trustworthiness." We conclude, therefore, that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from the denial of his petition for a writ of habeas corpus with respect to this issue.

C

The petitioner next argues that his counsel was ineffective in failing to object to the prosecutor's statement as to his personal knowledge of the "truth." Specifically, the petitioner claims that during his criminal trial, the prosecutor committed misconduct by bolstering Vas-

quez's testimony and that Hopkins improperly failed to object. We are not persuaded.

The following additional facts are necessary for the resolution of this claim. During direct examination, the prosecutor questioned Vasquez regarding the written plea agreement that he had entered into with the federal government, which required him to testify truthfully at the petitioner's criminal trial in exchange for the possibility of a reduced sentence in a pending federal criminal matter. Hopkins objected to the introduction into evidence of the plea agreement, arguing that it was irrelevant. During a colloquy in the presence of the jury, the prosecutor stated that he "knew that Vasquez would testify truthfully based on [his] personal knowledge gained from working on the case." During this exchange, the court questioned the prosecutor's claims of personal knowledge on two separate occasions. First, the court stated, "I don't know what this would prove [about Vasquez's] truthfulness. The truth of this witness, if he's truthful at all, will be decided by the jury, not this. Who knows the truth? Do you? I don't." The court continued: "[W]ell, you do the best you can and put on the evidence on what you believe is relevant, but I don't think you can vouch for the credibility of it. . . . I'll sustain the objection and strike the [evidence regarding the plea agreement]. The jury will decide this."

Hopkins testified during the habeas proceeding that he did not object to the court's ruling because the court was "belittling" the prosecutor's assumptions regarding the truthfulness of the witness, and he found this to be "helpful rather than hurtful." This clearly was a strategic decision made by Hopkins, and we agree with the habeas court that it falls well within the broad range of reasonable professional assistance. See *Woods* v. *Commissioner of Correction*, supra, 85 Conn. App. 549–50.

## D

The petitioner next argues that his counsel was ineffective in failing to object to an improper jury instruction regarding accomplice liability. Specifically, he contends that when the court charged the jury, it improperly stated that there was evidence of a criminal conspiracy at the location where the victim was shot and that Hopkins' failure to object to the instruction resulted in this court's refusal to address this issue on direct appeal. See *State* v. *Bond,* supra, 49 Conn. App. 191–92.[4]

The habeas court determined that a fair reading of the entire jury charge made it clear that this claim was unavailing. The court, in charging the jury, clearly instructed the jury that the fact-finding function was left to it. According to the habeas court, "[t]he 'conspiracy' remark merely explains that the accomplice instruction was given because there was a basis in the evidence for doing so." The habeas court concluded that there was no reasonable probability that the jury was misled by the trial court's remark.

We agree that any impropriety was cured by the trial court's instruction that the jury was the sole fact finder. We do not agree that the trial court's comment directed or mandated a finding of the existence of a conspiracy. The petitioner cannot sustain his burden with respect to the second prong of *Strickland.* Accordingly, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from the denial of his petition for a writ of habeas corpus.

## E

The petitioner's final claim is that his counsel was ineffective in failing to object to an improper jury

---

[4] We decline to review the defendant's claim because it fails to satisfy the second prong of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), by implicating only general principles of credibility. See *State* v. *Bond,* supra, 49 Conn. App. 192.

instruction regarding accessorial liability for assault in the second degree. Specifically, he contends that the trial court improperly charged the jury by failing to apply the dual intent requirement of accessorial liability to the underlying offense of assault in the second degree as required by General Statutes § 53a-8. We disagree.

The court charged the jury with respect to § 53a-8. It linked that statute to the murder count rather than to the assault counts. After the court completed its charge, it recalled the jury and corrected the charge. It stated that it had "inadvertently" used the word "murder" and that the jury should remove that reference from consideration. The court then stated that the accessory charge related solely to the third and fourth counts of assault in the second degree.

Although the court improperly referred to murder rather than to assault, it properly charged the jury on assault and gave a curative instruction. Because the charge, when viewed in its entirety, properly guided the jury, the petitioner cannot satisfy the second prong of *Strickland*. Accordingly, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from the denial of his petition for a writ of habeas corpus.

We are convinced that the petitioner has failed to demonstrate that these issues are debatable among jurists of reason, that a court could resolve them in a different manner or that they deserve encouragement to proceed further.

The appeal is dismissed.

In this opinion the other judges concurred.