STATE OF CONNECTICUT *v.* WILLIAM ASKEW
(AC 17799)

Foti, Hennessy and Sullivan, Js.

Argued April 27—officially released September 21, 1999

*Michelle M. Napoli*, special public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *John Connelly*, state's attorney, and *Terence Mariani*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, William Askew, appeals from a judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] The defendant claims that (1) the out-of-court identification

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

procedures employed by the state denied him his due process rights and (2) there was insufficient evidence to sustain the defendant's convictions on all crimes charged beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1 a.m. on October 29, 1996, David Rodriguez and Jose Rodriguez were sitting in a car parked in front of 253 Dorchester Avenue in Waterbury when a black Mazda pickup truck with one working headlight pulled up along the driver's side of their car and stopped approximately three feet away. The passenger of the truck, the defendant, exited the truck and approached the driver's side of the car. A brief conversation ensued between David Rodriguez and the defendant. Soon thereafter, the defendant pulled out a gun and demanded money from the Rodriguezes. When they told the defendant that they had no money, the defendant made them get out of the car and lie between their car and the pickup truck. The defendant and the driver of the truck, Tracy Jones, searched the Rodriguezes and the interior of their car. They took $20 and a black coat from Jose Rodriguez and an electronic telephone book from David Rodriguez. A gun was also removed from the car. The defendant and Jones got back in the truck and drove off.

Between ten and twenty minutes after the incident, David Rodriguez flagged down Officer Daniel Caruso of the Waterbury police department, who was driving along Dorchester Avenue. He told Caruso what had happened and described the defendant, Jones and the truck that they were driving. Approximately ten to fifteen minutes later, a black Mazda pickup truck with one working headlight was spotted on Mitchell Avenue by Officer Daniel Mancini of the Waterbury police department. As Mancini approached the truck, it sped away. A high speed chase ensued, ending when the

truck crashed into a parked car on Ives Street. Both occupants of the truck fled. The defendant was soon captured by Michael O'Loughlin, a Waterbury police officer, and was wearing the black coat that was stolen from Jose Rodriguez. The driver of the truck was captured approximately one hour later. A search of the defendant failed to discover either the stolen gun or the electronic telephone book.

After hearing a report that one of the suspects had been captured, Mancini took both Rodriguezes to Ives Street to identify the suspect. When they arrived, the defendant was sitting in a police transport vehicle wearing the stolen coat. David Rodriguez identified the defendant as the person who had robbed him. He also identified the black Mazda pickup truck as the same vehicle that pulled up next to his car just prior to the robbery. Immediately after the show-up identification, David Rodriguez was taken to the police station where he was shown a photograph of the defendant. As the police showed him the photograph, one of the officers said, "That's the guy right?" David Rodriguez responded in the affirmative.

On August 8, 1997, the jury convicted the defendant of two counts of robbery in the first degree. This appeal followed.

I

The defendant first claims that the pretrial identification procedures employed by the state violated his state and federal due process rights to a fair trial because they were unnecessarily suggestive and unreliable. We disagree.

Because the defendant did not raise this claim before the trial court, we must determine whether the defendant can prevail under the four-prong test articulated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d

823 (1989).[2] See *State* v. *Daniels*, 248 Conn. 64, 79, 726 A.2d 520 (1999) (en banc). While the first two prongs of the *Golding* analysis consider whether the defendant's claim is reviewable, the last two prongs address the merits of the claim. Id.; *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998). "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 240.

We conclude that the defendant's claim fails the third prong of *Golding* analysis because the identification procedures employed by the state did not deprive the defendant of a fair trial. "In determining whether identification procedures violate a defendant's due process rights, [t]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail in his claim, the defendant must demonstrate that the trial court erred in both of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 246, 710 A.2d 732 (1998); *State* v. *Taylor*, 239 Conn. 481, 498–99, 687 A.2d 489 (1996),

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." (Internal quotation marks omitted.) *State* v. *Wooten*, 227 Conn. 677, 687, 631 A.2d 271 (1993). To determine whether an unnecessarily suggestive procedure results in an identification that is nonetheless reliable, we must "weigh the corrupting effect of the suggestive procedure in light of certain factors such as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [that person's] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Internal quotation marks omitted.) Id., 687–88.

In the present case, David Rodriguez had ample opportunity to view the defendant during the incident. He testified that he had a brief conversation with the defendant in which he had an unobstructed view of the defendant's face from very close range.[3] Shortly after the incident, he provided an accurate description of the defendant to the police before any identification procedure ever took place.[4] When taken to Ives Street to identify the defendant, he did not hesitate to identify both the defendant and the truck involved in the robbery. Furthermore, only about thirty minutes had passed between his viewing of the defendant and the show-up identification. We have upheld the reliability of

---

[3] Specifically, David Rodriguez testified that the defendant got out of the front passenger seat of the truck and spoke to him face-to-face through the window of his car. Also, he testified that the defendant was not wearing a mask and his face was not covered. Furthermore, he testified that the defendant asked him for cigarettes, pointed a gun at him and demanded money.

[4] In testimony, David Rodriguez described the perpetrators as two black men with dredlocks, wearing dark-hooded sweatshirts and driving a black Mazda pickup truck with one broken headlight.

other possibly unnecessarily suggestive identification procedures when more than thirty minutes passed between the viewing of the defendant and the show-up identification. See *State* v. *Gettes*, 42 Conn. App. 472, 478, 680 A.2d 996, cert. denied, 239 Conn. 921, 682 A.2d 1009 (1996) (fifteen days); *State* v. *Sims*, 12 Conn. App. 239, 242, 530 A.2d 1069, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987) (thirty-five minutes). While the identification procedures used by the police may have been unnecessarily suggestive, the identification was nonetheless reliable.[5]

After our review of the record, we conclude that the identification was reliable under the totality of the circumstances and, thus, the defendant's due process rights were not violated. Because the defendant was not deprived of a fair trial, the third prong of *Golding* has not been satisfied.

II

The defendant next claims that the trial court improperly denied the defendant's motion for judgment of acquittal because there was insufficient evidence to sustain his conviction of two counts of robbery in the first degree in violation of § 53a-134 (a) (4). We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that

---

[5] To support his claim that the identification procedure was unnecessarily suggestive, the defendant relies essentially on the fact that David Rodriguez identified the defendant while he was handcuffed, seated in the police wagon and wearing the stolen coat.

To support his claim that the identification procedure was unreliable, the defendant relies essentially on the fact that David Rodriguez was unable to get a good look at the perpetrators because the perpetrators' faces were obscured. David Rodriguez' testimony differs, however, stating that the defendant's face was not obscured.

evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Rogers*, 50 Conn. App. 467, 473, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). "[W]e give deference not to the hypothesis of innocence posed by the defendant, but to the evidence and the reasonable inferences drawable therefrom that support the jury's determination of guilt." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994). While there were disputed facts presented at trial, the jury weighed the credibility of each side and determined that the defendant had committed the crime of robbery in the first degree. The credibility of the witnesses is for the jury to determine. *State* v. *Santiago*, 245 Conn. 301, 318, 715 A.2d 1 (1998). Furthermore, the jury may "draw whatever inferences from the evidence of facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224, 733 A.2d 156 (1999).

In the present case, the testimony revealed the following facts: (1) after a brief conversation between the defendant and David Rodriguez, the defendant pointed a gun at him and demanded money; (2) David Rodriguez described the vehicle involved in the crime to police as a black Mazda pickup truck with one broken headlight; (3) between twenty to thirty-five minutes after the crime, the defendant was spotted in the passenger seat of a black Mazda pickup truck with one broken headlight by a police officer in the vicinity of the crime; (4) as the police officer approached the truck, the defendant, who started to get out of the truck, saw the police officer and jumped back in the truck; (5) the truck sped off and a high speed pursuit of the truck by the police

ensued; (6) after the truck crashed into a parked car, the defendant got out of the truck and ran from the police; (7) the defendant was captured wearing a coat that David Rodriguez accurately identified as the coat stolen during the robbery; and (8) when Jones was captured, he told the police that it was the defendant who had committed the robbery. Therefore, the jury reasonably could have concluded that there was sufficient evidence to convict the defendant on both counts of robbery.

It is not the task of the Appellate Court to "sit as a [twelfth] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Internal quotation marks omitted.) *State* v. *Coleman,* 52 Conn. App. 466, 469, 727 A.2d 246, cert. denied, 249 Conn. 902, 732 A.2d 776 (1999); see also *State* v. *Williams,* 16 Conn. App. 75, 78, 546 A.2d 943 (1988). We are content to rely on the juries' "good sense and judgment." *State* v. *Wooten,* supra, 227 Conn. 688. On the basis of the testimony presented at trial, we conclude that the jury reasonably could have determined that there was sufficient evidence to convict the defendant on two counts of robbery.

The judgment is affirmed.

In this opinion the other judges concurred.