STATE OF CONNECTICUT *v.* JAMES BROWN
(AC 17606)

Spear, Mihalakos and Daly, Js.

Argued September 29—officially released November 30, 1999

*Francis L. O'Reilly*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, was *Jonathan Benedict*, state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, James Brown, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the second degree in violation of General Statutes § 53a-102 (a)[1] and threatening in violation of General Statutes § 53a-62 (a) (1).[2] The defendant claims that (1) the trial court's questioning of a witness deprived the defendant of a fair trial, (2) the trial court's treatment of defense counsel deprived the defendant of his right to a fair trial before an impartial judge and jury and (3) the trial court's sequestration order was violated by the interaction outside the courtroom between the victim's brother and a sequestered witness. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[2] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

The jury reasonably could have found the following facts. On November 23, 1996, at approximately 4 a.m., the victim, Cindy Perez, was awakened by a noise and observed an intruder crouched down and moving about the room. The intruder then jumped on the victim's bed and kneeled over her. The victim's five month old son was also in the house at the time. She pleaded with intruder not to hurt her son. The intruder then placed his hand over the victim's mouth and verbally threatened her. She recognized the intruder's voice as that of the defendant, whom she had known for four or five months. The defendant then removed his hand from the victim's mouth and asked her for money. A brief conversation ensued while the defendant held a nine millimeter gun to the victim's head. The victim eventually gave the defendant jewelry. After having been in the house for about ten to fifteen minutes, the defendant left through a second floor window. The victim eventually contacted the police and told an officer that the intruder was a man she knew named "James." Detective Carl Leonzi, Jr., of the Bridgeport police department was assigned to the case. The victim was not very cooperative throughout Leonzi's investigation.[3] At trial, the court entered a sequestration order prohibiting all witnesses from either discussing their testimony with other witnesses or assisting them with their testimony.

## I

The defendant's first claim is that the trial court deprived him of a fair trial when it "shed its cloak of neutrality and assumed the role of advocate for the state" in its questioning of Leonzi. We disagree.

"Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral

---

[3] Leonzi testified that he had attempted to meet with the victim a couple of times but that she was unwilling to cooperate. He further testified that the victim and her boyfriend had expressed animosity and used vulgar language toward the police on more than one occasion.

atmosphere. U.S. Const., amend. XIV; Conn. Const., art. I § 8; *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985); *State* v. *Gordon*, 197 Conn. 413, 424D, 504 A.2d 1020 (1985)." *State* v. *Smith*, 200 Conn. 544, 549, 512 A.2d 884 (1986). In certain circumstances, the court has a discretionary right to question witnesses. Id.

Leonzi was questioned by counsel concerning his investigation of the incident and his relationship with the victim and the defendant. At the conclusion of the examination by defense counsel, the court began its own inquiries.[4] "[T]he trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so." *State* v. *Tatum*, 219 Conn. 721, 740, 595 A.2d 322 (1991); *State* v. *Bember*, 183 Conn. 394, 401, 439 A.2d 387 (1981). Although the court's questions may have brought out some of the strengths and weaknesses of either party's case, its aim was to shed more light on the case and was in no way prejudicial to either side. See *State* v. *Echols*, 170 Conn. 11, 14, 364 A.2d 225 (1975). "[W]hen it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts." (Internal quotation marks omitted.) *State* v. *Tatum*, supra, 740; *State* v. *Fernandez*, supra, 198 Conn. 11.

Furthermore, the court in this matter issued a curative instruction to the jury.[5] "Our appellate courts have

---

[4] The court asked Leonzi if he had wanted to be reassigned from the investigation because of the animosity expressed by the victim and her boyfriend toward the police. The court also inquired as to why he had never returned to the crime scene after his initial investigation. Finally, the court asked Leonzi if he knew that the victim had a five month old child.

[5] The court gave the following curative instruction: "My actions during the trial in ruling on motions or objections by counsel or in comments to counsel or in questions to witnesses or in setting forth the law in these instructions are not to be taken by you as any indication of my opinion as to how you should determine the issues of fact."

always given great weight to curative instructions in assessing claimed errors; see *State* v. *Fernandez*, supra, 198 Conn. 17; *State* v. *Drouin*, 12 Conn. App. 101, 105, 529 A.2d 740 (1987); especially in assessing a defendant's claim of prejudice. *State* v. *Smith*, supra, 200 Conn. 552; see *State* v. *Drouin*, supra, 101." *State* v. *Pharr*, 44 Conn. App. 561, 577, 691 A.2d 1081 (1997).

The court's questioning of Leonzi concerning his investigation and his relationship with the victim did not rise to such a level of prejudice as to affect the defendant's overall case. The court should be careful not to prejudice the rights of any party by its questioning of witnesses, and caution should be used by the court to confine itself to clarification of testimony already given. "In whatever he does, the trial judge should be cautious and circumspect in his language and conduct." (Internal quotation marks omitted.) *Fair* v. *Warden*, 211 Conn. 398, 413–14, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989). "Where that does not occur, however, a defendant is not entitled to a new trial unless he can show that prejudice resulted from the trial court's actions. Id. [414]; see *State* v. *Echols*, supra, 170 Conn. 16." *State* v. *Pharr*, supra, 44 Conn. App. 577. Our review of the record indicates that the court was neutral throughout its questioning of Leonzi, and it actions had no prejudicial effect against the defendant.

## II

The defendant next claims that the trial court's improper treatment of his trial counsel deprived him of a fair trial before an impartial judge and jury. Because the defendant did not preserve this claim at trial, we must determine whether he can prevail under the four-prong test articulated in *State* v. *Golding*, 213 Conn.

233, 239–40, 567 A.2d 823 (1989).[6] If the defendant fails to meet any one of the four parts of *Golding*, his claim will fail. Id., 240. "The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id. The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim. *State* v. *Beltran*, 246 Conn. 268, 275, 717 A.2d 168 (1998); *State* v. *Askew*, 55 Conn. App. 34, 38, 739 A.2d 274 (1999).

We conclude that the defendant has not satisfied the second prong of *Golding* and therefore decline to review his claim. It is the defendant who "bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding*, supra, 213 Conn. 240.

In this case, the defendant claims that on several occasions the court unduly disciplined his counsel, which gave the jury a negative impression and was prejudicial to the defendant.[7] At no time during these incidents, however, did the defense counsel object to the court's actions or move for a mistrial. Furthermore,

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] On numerous occasions, the defense counsel objected to the court's questioning of a witness. Those objections were overruled, and the court repeatedly told the defense counsel to sit down.

as stated previously, the trial court issued curative instructions to the jury. See footnote 5. The defendant has not demonstrated that his claim implicates his due process right to a fair trial and, as a result, fails to satisfy the second prong of *Golding*. We therefore decline to review this claim.

### III

The defendant's final claim is that the requirement of sequestration was violated by the interaction outside the courtroom between the victim's brother and the victim, a sequestered witness. We disagree.

Sequestration orders assure that witnesses will testify solely on the basis of their personal knowledge. *Geders* v. *United States*, 425 U.S. 80, 87, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976); *State* v. *Robinson*, 230 Conn. 591, 600, 646 A.2d 118 (1994). "The obvious purpose of sequestering a witness while another is giving his testimony is to prevent the one sequestered from shaping his testimony to corroborate falsely the testimony of the other." (Internal quotation marks omitted.) *State* v. *Williams*, 169 Conn. 322, 331, 363 A.2d 72 (1975). In the present case, it was impossible for any such corroboration to occur since one of the parties involved in the alleged violation of the sequestration order, the victim's brother, was never called as a witness but was merely a spectator to the proceedings. A sequestration order, without additional restrictions, simply prohibits a sequestered witness from being in the courtroom when he or she is not testifying. Id.

The defendant relies principally on *State* v. *Falby*, 187 Conn. 6, 25–27, 444 A.2d 213 (1982), which held that it was improper for the state to supply its expert witnesses with a transcript of the testimony by the defendant's expert, in violation of a sequestration order. Unlike the situation in *Falby*, however, there is no allegation in the present case that someone supplied a

transcript to prospective sequestered witnesses. Rather, in this case a spectator heard spoken testimony and relayed it to a previously sequestered witness. The defendant's sister, who alleged that there were conversations between the victim's brother and the victim, failed to hear any substantial dialogue between them.[8] Therefore, it is impossible to capture the true nature of their conversations.

General Statutes § 54-85a provides: "In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any *witness* to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying." (Emphasis added.) The sequestration order in this case applied only to witnesses and not to court spectators.[9] Either party could have asked for an expanded sequestration order that prohibited witnesses from speaking not only to other witnesses, but to spectators in the courtroom as well. This was not done. While the broad tenor of a sequestration order may have been violated, the order the court gave in this case, which applied solely to witnesses, was not violated. The victim's brother was outside the scope of the court's sequestration order and, thus, there was no violation.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The defendant's sister testified that she saw the victim's brother come out of the courtroom and engage in a conversation with the victim, the sequestered witness. The defendant's sister was, however, unable to hear anything the victim's brother said except that she heard him say that "the defendant had a smile on his face." She also testified that she heard the sequestered witness saying that she did not like policemen.

[9] When defense counsel repeatedly inquired as to whether the victim's brother had violated the sequestration order, the court stated that "[t]his young man, again for the nth time, is not covered by the sequestration order."